# Clark *v.* The State.

### *Indictment for Keeping Billiard-table without License.*

1. *Billiard-table; when license is necessary.* — A person may keep a billiard-table for his own amusement, or the amusement of his friends, without taking out a license under the revenue law; but if by the rules of the table compensation is charged for its use, directly or indirectly (*e. g.* as where the loser of each game is required to buy drinks for the players at the owner's adjoining bar), a license is necessary.

2. *Abstract charge, or tending to mislead jury.* — A charge which is abstract, or which tends to mislead the jury, is properly refused.

3. *Billiard-table; amount of license, or fine in default of license.* — Under the Revenue Law of 1868 (§ 110), twenty-five dollars is the price of a license for keeping a billiard-table for one year from the 1st day of January, and a proportionate sum for any less period commencing after that date; and on conviction for a failure to take out a license (§ 111), the amount of the fine is three times the price required to be paid for a license in the particular case.

FROM the Circuit Court of Barbour.

Tried before the Hon. J. McCALEB WILEY.

The indictment in this case charged, that the prisoner, " being engaged in the business of keeping a billiard-table, did keep a billiard-table without license, and contrary to law." " On the trial," as the bill of exceptions states, " the State introduced evidence tending to prove that the defendant kept a billiard-table in his bar-room, in said county, from about the 1st of November, 1872 ; that his instructions to those who played

upon such table *was*, that after each game on the table, the loser should treat at the defendant's bar those who had played with him, and must pay for as many drinks as there were players, whether such players wished to drink or not. The proof tended to show, also, that the defendant sold drinks to many under this arrangement, but never received any pay for drinks, except when such drinks were taken by the players; and there was no proof that the defendant otherwise charged for the use of said table. This being the substance of all the evidence, the defendant requested the court, in writing, to charge the jury : 1st, that if they believed, from the evidence, that the defendant kept a billiard-table, and charged nothing for its use, he could not be convicted; 2d, that if they believed, from the evidence, that the defendant kept a billiard-table without any charge for its use, and merely to attract customers to his bar in the same room, then he could not be convicted; 3d, that if they have any reasonable doubt as to whether the defendant received any compensation for the use of his billiard-table, he cannot be convicted; 4th, that if they have any reasonable doubt as to whether the defendant actually received any benefit from keeping the billiard-table, he must be acquitted; and, 5th, that if the jury find the defendant guilty, then he must only be fined in a sum three times the amount which it would cost him to procure a license from the first of the month in which he began to keep such table, to the end of the financial year. The court refused to give each of these charges, and the defendant excepted to their refusal." The jury returned a verdict of guilty, and assessed the fine at seventy-five dollars, and judgment was rendered according to the verdict.

JNO. A. FOSTER, for the prisoner.

BEN. GARDNER, Attorney General, *contra.*

PECK, C. J. — A person may, undoubtedly, keep a billiard-table for his own amusement, or the amusement of his friends, without a license. But if by the rules of the table a profit is to arise from the use of it, then it must be licensed, or the keeper of the table will be guilty of a misdemeanor (Revenue Act of 1868, § 111), and subject to a fine three times the sum required to be paid for a license; which is twenty-five dollars, unless the keeping of the table commenced after the 1st day of January; in which case, the price of the license is to be reckoned in proportion to the time, counting from the first day of the month in which the keeping of the table commenced to the end of the year. Ib. § 110.

[McCuller *v.* State.]

The first and second charges asked by the defendant might, and probably would, have misled the jury. There was no evidence tending to show that the defendant charged nothing for the use of his table. On the contrary, his instructions to those who played upon the table were, that the loser, after each game, must treat at his bar those who had played in the game, and must pay for as many drinks as there were players, whether such players wished to drink or not. This was, manifestly, a clear device resorted to by him in order to make a profit from the table, and yet defeat the State out of her just revenue, by making no direct charge for the use of it. If the first and second charges had been given, the jury might reasonably have inferred, as no such charge was made for the use of the table, that the defendant could not be convicted.

There was no error in refusing to give the third and fourth charges asked. Although the defendant may not have received any compensation for the use of his table, or derived any actual profit from its use, yet, if compensation was demanded, either directly or indirectly, he was guilty ; and his guilt or innocence did not depend upon a matter of profit or loss in keeping the table.

The fifth charge asked, however, was correct and proper, and should have been given. If the defendant did not begin to keep the table until the first day of November, he could only be fined, on conviction, three times the amount required to be paid for a license from that time until the end of the financial year. See Revenue Act, §§ 110, 111.

For the error in refusing to give the fifth charge, the judgment is reversed, and the cause is remanded for another trial.